IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DIANE DEAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 22-cv-1082-JES-JEH |
| ILLINOIS STATE UNIVERSITY, | ) ) ) |
| Defendant. | )  **JURY DEMAND** |

**First Amended Complaint**

The Plaintiff, Diane Dean ("Dean") in support of her complaint against the Defendant, Illinois State University ("ISU"), states as follows:

**Nature of Complaint**

1. Dean brings three separate claims against the Trustees of Illinois State University ("ISU"). First, she contends that she has been retaliated against because of engaging in activity that is protected under Title VII in violation of 42 U.S.C. 2000e-3. Second, she contends that she has been discriminated against because of her race in violation of 42 U.S.C. 2000e. Third, she contends that she has been discriminated against because of her gender in violation of 42 U.S.C. 2000e.

2. All of Dean's claims allege violations of federal law and this Court has jurisdiction to hear those claims pursuant to 28 U.S.C. 1331.

3. Dean filed a complaint with the United States Equal Employment Opportunity Commission on June 3, 2020. In that charge she alleged that she had been subjected to retaliation under both Title VII and the Americans with

1

Disabilities Act, that she had been discriminated against because of her race (Caucasian), and that she had been discriminated against because of her gender (Female).

4. On December 20, 2021, the EEOC issued Dean a notice of her right to bring a lawsuit against ISU.

**Factual Background**

5. Dean is an adult Caucasian female. At times relevant to this proceeding she was employed by ISU as an Associate Professor in its Department of Educational Administration Foundations.

6. ISU is a state university located in Normal, Illinois.

7. Lenford Sutton, who is black and male, was at certain times relevant to this claim the Chair of the ISU Department of Educational Administration Foundations ("EAF"). Sutton assumed that position at some point in time in 2014.

8. Throughout her tenure at ISU Dean has engaged in numerous actions that would be considered protected activities under Title VII. A portion of these include the following:

a. In the summer of 2012 she complained that she had been subjected to gender discrimination. Her complaint alleged that a male co-worker was bullying female colleagues because of their gender and she also expressed concerns about disparate pay for comparable work based upon gender. This complaint was initially forwarded to the EAF chair, then to ISU's Human Resources Department and other administration officials. Sutton was not the EAF chair at the time.

b. In April of 2015 a female student filed a Title IX complaint against Sutton with ISU. Dean supported that complaint and was identified as a witness for the complainant. Dean provided support as a witness in the investigation of that complaint. While an open investigation into his actions was ongoing, Sutton discussed the investigation in EAF Department meetings. He did so in a way that attempted to persuade faculty members to support him. During an interview regarding that complaint Dean shared her own concerns about Sutton's discriminatory actions.

c. In May of 2015 Dean complained to ISU's Office of Equal Opportunity and Access that she had been subjected to discrimination on the grounds of her gender and her race. During this meeting she expressed specific concerns about Sutton and what she perceived to be discriminatory actions on his behalf.

d. On February 12, 2016, Dean filed a complaint against Sutton with ISU's Academic Freedom, Ethics and Grievance Committee. That committee is an elected body of faculty members. In that complaint she alleged that Sutton had engaged in discriminatory conduct. She specifically alleged that he had engaged in discrimination in job assignments; discrimination in making performance evaluations; that he engaged in discriminatory and coercive management practices.

e. In March of 2016 Dean filed a complaint with ISU's Office of Equal Opportunity and Access alleging that Sutton had engaged in discriminatory conduct. The complaint made it clear that Dean opposed such behavior on the part of Sutton.

 f. In June of 2017 a second Title IX investigation was conducted regarding Sutton by ISU's Office of Equal Opportunity and Access. Dean supported the complaint in that matter and provided testimony in that proceeding that was critical of Sutton.

 g. In July of 2017, because of complaints she had made about Sutton, Dean was advised that ISU's Office of Equal Opportunity and Access had launched an investigation into Sutton concerning his discriminatory actions directed towards her.

 h. In March of 2019 she met with ISU administrators to report her concerns about Sutton, including his discriminatory actions. She made it clear that she opposed such actions.

## Count I
*Title VII Retaliation*

9. Paragraphs 1-8 are incorporated herein.

10. The actions identified in paragraph 8 constitute activities that are protected under Title VII from retaliation.

11. ISU, by and through Sutton and others, has retaliated against Dean because of the protected activities that she has engaged in.

12. There had been an historical pattern of retaliating against Dean when she made complaints against Sutton. This pattern continued in 2019 and 2020. Within a matter of weeks of her complaint in March 2019 she was advised by ISU's Associate Vice President for Academic Administration that her complaint against Sutton "borders on a violation of the University Code of Ethics." She was further told that

4

"I hope you can find a way to focus your talent and energy on having a positive impact on your students, making a substantive contribution to your discipline, engaging in meaningful service to the University and your profession, and finding a way to work with your department chair." This statement was made in an attempt to dissuade Dean from speaking out against matters that she perceived as being in violation of Title VII.

13. This retaliation continued and has included, but is not limited to, the following:

   a. Repeatedly downgrading her performance evaluations. As a result of the downgrading of her evaluations her income has been impacted and her retirement benefits have been impacted.

   b. Refused to give her a promotion to the position of Associate Dean in 2019.

   c. Refused to allow her to serve on committees that would enhance her professional reputation.

   d. Refused to allow her to work in the summer months despite the fact that it is in her contract that she be allowed to do so. This impacted her annual income significantly and impacts her retirement benefits.

   e. Refused to allow her to attend conferences that would enhance her professional reputation.

   f. Created a hostile working environment that has forced her to take a leave of absence. This included not allowing her to attend important meetings involving her students, refusing to consider her to be an editor of the Grapevine, Dr. Sutton

repeatedly singling her out for criticism, not allowing her student to receive the dissertation of the year award, threats by Sutton to eliminate some of her course load, Sutton engaging in actions to discourage students from working with Dean (including advising certain students that she was a racist and telling students not to work with her and if they did they wouldn't be able to graduate), despite her requests for continuing education Sutton refused to allow her to attend programs where he allowed others to do so, Sutton refusing to allow her to serve on the doctoral admissions committee (and other committees) but giving others full opportunity to do so, engaging in retaliatory investigations, and Sutton placing Dean on mute when she participated via telephone in Departmental meetings.

    g. Has treated her students differently than other students are treated.

    h. Denial of professional opportunities that are afforded to other faculty members.

14. But for Dean's protected activities, the retaliation outlined in paragraph 13 would not have occurred.

15. As a result of these actions Dean has sustained economic damages and has sustained emotional distress damages as well.

Wherefore, Dean requests that this Court enter judgment on her behalf and provide her with the following:

1. An order finding that she was unlawfully retaliated against by ISU.

2. An award of damages for the injuries that she has sustained.

3. An award of fees and costs.

4. Any other relief that is appropriate.

## Count II
*Race Discrimination*

16. Paragraphs 1-15 are incorporated herein.

17. Dean is Caucasian and has been subjected to different treatment than her non-Caucasian peers. This disparate treatment has been directed primarily by Sutton.

18. During his tenure Sutton stoked racial divisions in the EAF Department. Much of this was directed at Dean. He specifically advised others that she was a racist and encouraged others in the Department to make similar and unsubstantiated claims.

19. Taking the lead from Sutton, there were other EAF faculty members who made racially discriminatory statements as well. One faculty member made the specific statement to a student that "you can't trust what white people say."

20. For the summer semester of 2020 Sutton would not allow Dean to have a teaching course load. This resulted in a loss of income for Dean. Instead, Dean was offered the opportunity (at a reduced income level) to redesign the assignments for a black male colleague. This decision was based upon race and was discriminatory.

21. Dean was investigated for blatantly false allegations suggesting that she was racist. This occurred after she had been threatened by the Vice President of Academic Administration because of her complaints against Sutton.

22. Dean was given an unsatisfactory evaluation by Sutton in early 2020. This action directly bears on her annual income as a professor. Sutton utilized different

criteria to evaluate Dean than he did black faculty members. The disparate criteria included differing standards for response time, feedback, teaching technology skills, class meeting logistics, and the fact that others were provided support that she was not provided. The evaluation included false allegations of racism against Dean.

23. Students were told not to work with Dean and that, if they did, no other faculty members would work with her. This was different than the treatment black faculty members received.

24. As a result of these actions Dean has sustained economic damages and has sustained emotional distress damages as well.

Wherefore, Dean requests that this Court enter judgment on her behalf and provide her with the following:

1. An order finding that she was unlawfully discriminated against because of her race by ISU.

2. An award of damages for the injuries that she has sustained.

3. An award of fees and costs.

4. Any other relief that is appropriate.

## Count III
*Gender Discrimination*

25. Paragraphs 1-15 are incorporated herein.

26. Dean is female and has been subjected to different treatment than her male peers. This has been directed primarily by Sutton.

27. The discrimination includes the refusal to assign Dean a course load for the Summer 2020 semester. One of the courses that Dean would have normally taught

was given to a male colleague who had never taught the course in the past and was less qualified to do so. All male colleagues who wanted a full-teaching load of three courses were granted their request. This resulted in a loss of income and a disparity of wages for Dean in comparison to her male colleagues.

28. Dean's gender was a contributing and motivating factor for not allowing her a full teaching load.

29. As a result of these actions Dean has sustained economic damages and has sustained emotional distress damages as well.

Wherefore, Dean requests that this Court enter judgment on her behalf and provide her with the following:

1. An order finding that she was unlawfully discriminated against because of her gender by ISU.

2. An award of damages for the injuries that she has sustained.

3. An award of fees and costs.

4. Any other relief that is appropriate.

**DEAN REQUESTS A JURY TRIAL FOR EACH CLAIM**

*Diane Dean*
Dated:     APRIL 5, 2023

By:  /s/ John A. Baker
     Her Attorney

John A. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
Telephone:     (217) 522-3445
Facsimile:      (217) 522-8234

9

Email: jab@bbklegal.com

## CERTIFICATE OF SERVICE

This document was filed utilizing this Court's ECF system. A copy will automatically be sent to all counsel of record. No copies have been served via any alternative method of service.

*Diane Dean*
Dated:   APRIL 5, 2023

By: /s/ John A. Baker
     Her Attorney

John A. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
Telephone:     (217) 522-3445
Facsimile:       (217) 522-8234
Email:           jab@bbklegal.com